Quarles & Brady LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

Jeffrey H. Wolf (AZ #011361)
jeffrey.wolf@quarles.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| P&B Franchise, LLC, an Arizona limited liability company; and Melodi Lee Harmon, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Andrew R. Dawson, an individual,<br><br>Defendant. | No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs, P&B Franchise, LLC ("P&B") and Melodi Lee Harmon ("Ms. Harmon") (collectively, "Plaintiffs"), for their Complaint against defendant Andrew R. Dawson ("Defendant"), allege as follows:

**NATURE OF THE ACTION**

1. This action arises from Defendant's clandestine surveillance of Plaintiffs' private, password-protected email accounts; theft of Plaintiffs' protected emails; and exploitation of the information stated in those emails, including proprietary business information and attorney-client privileged communications, in Defendant's pending divorce proceedings against Ms. Harmon's daughter.

2. Ms. Harmon is the founder and CEO of P&B, which operates Primp and Blow® blow dry bars. Ms. Harmon has grown Primp and Blow from a single location in

Scottsdale, Arizona into a national franchise system, offering "confidence to go" at more than fifteen franchised blow dry bars in five states.

3. Upon information and belief, Defendant illegally accessed Plaintiffs' email accounts after filing for divorce from Ms. Harmon's daughter.

4. Upon information and belief, after Defendant secretly and illegally monitored Plaintiffs' email accounts, he surreptitiously copied and saved information from those accounts for disclosure he deemed advantageous in the divorce proceedings.

5. Defendant recently disclosed his intent to use certain of Plaintiffs' protected emails and documents as exhibits in support of his case in the upcoming divorce trial. The emails and documents Defendant identified in the divorce case include proprietary business information and attorney-client privileged communications. Defendant could have obtained these documents only through wrongful access to Plaintiffs' emails.

6. As a result of Defendant's illicit behavior, Plaintiffs have sustained damages and will continue to incur damages. Plaintiffs seek injunctive relief and damages against Defendant for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; violation of the Electronic Communications Privacy Act and Stored Communications Act, 18 U.S.C. §§ 2520 and 2707; intrusion upon seclusion; and public disclosure of private information.

**PARTIES, JURISDICTION AND VENUE**

7. P&B is an Arizona limited liability company with its principal place of business located in Maricopa County, Arizona.

8. Ms. Harmon is a citizen of Arizona who resides in Maricopa County, Arizona.

9. Defendant is a citizen of Arizona who resides in Maricopa County, Arizona.

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

11. The Court has federal question jurisdiction because Plaintiffs bring suit under 18 U.S.C. § 1030(g) and the damages caused by Defendant's wrongful access to Plaintiffs'

1  computer system exceeds $5,000, and because Plaintiffs bring suit under 18 U.S.C. §§ 2520
2  and 2707.
3      12.    The Court also has supplemental jurisdiction over the claims arising under
4  state law related to the action pursuant to 28 U.S.C. § 1367(a).
5      13.    Venue in this Court is proper because Ms. Harmon and Defendant reside in
6  this judicial district, P&B's principal place of business is in this district, and a material part
7  of the actions and events giving rise to the claims asserted herein occurred within this
8  district.

## GENERAL ALLEGATIONS

    14.    Ms. Harmon is an entrepreneur and resident of Maricopa County, Arizona.

    15.    In 2010, Ms. Harmon founded Primp and Blow, A Blow Dry Bar ("Primp and Blow"), opening its first location in Scottsdale, Arizona.

    16.    Over the next few years, Ms. Harmon managed the growing business of Primp and Blow, opening additional locations in Phoenix and Scottsdale.

    17.    In 2013, Ms. Harmon began franchising Primp and Blow, thereby allowing independent business owners the opportunity to offer affordable luxury services across the country with the backing of the proven business model and marketing engine Ms. Harmon had developed. Today, Primp and Blow offers "confidence to go" at more than fifteen locations in five states. Ms. Harmon operates the Primp and Blow franchise system through P&B.

    18.    At the direction of her corporate attorney, for estate planning purposes, Ms. Harmon gifted her daughter and only child, Cynthia, partial ownership interests in Primp and Blow entities.

    19.    During the relevant times described herein, Defendant was married to Cynthia.

    20.    At some point unknown to Ms. Harmon, the credentials for Ms. Harmon's and Plaintiffs' email accounts were logged-in and saved to the "Mail" application on a family iMac computer, which was kept in Cynthia and Defendant's marital home.

21. Ms. Harmon was not aware her credentials were saved to the "Mail" application, and Defendant never disclosed to her that he was able to access her email account through the family computer.

22. Upon information and belief, Defendant, a professional sound engineer, is sophisticated in terms of computer technology, with his own computer, and would have no need to use the family computer.

23. Furthermore, Ms. Harmon never authorized Defendant to access or view her personal or business emails, even if they were accessible through the family computer or any other device, for any purpose.

24. In general, Ms. Harmon's email accounts are protected by a unique account name, password, and verification steps.

25. Ms. Harmon recently discovered that, at unknown points in time, Defendant accessed Plaintiffs' email accounts.

26. Upon information and belief, Defendant has secretly and without authorization used the "Mail" application on the family iMac computer (and potentially other iCloud-connected devices) to access, monitor, and copy or transfer Plaintiffs' personal and business emails and other documents to his own computer accounts.

27. On or about April 13, 2020, Defendant filed a Petition for Dissolution of Non-Covenant Marriage against Cynthia in Maricopa County Superior Court, No. FC2020-002283 (the "Divorce Proceedings").

28. In the Divorce Proceedings, Defendant asserts he obtained ownership in Primp and Blow during the marriage, and that it is a community asset subject to division. To that end, on August 23, 2022, Defendant filed a motion to join Ms. Harmon as a Third-Party Petitioner to the Divorce Proceedings, which was granted on December 13, 2022.[1]

29. On or about April 27, 2023, Defendant disclosed that he intends to use as exhibits in the Divorce Proceedings dozens of emails originating from Plaintiffs' email

---

[1] Ms. Harmon and Cynthia deny Defendant has any interest in Primp and Blow arising from Ms. Harmon's gift to her daughter.

1    accounts, as well as documents reflecting Primp and Blow's proprietary business
2    information obtained from those accounts.

3        30.    Certain emails Defendant has disclosed in the Divorce Proceedings include
4    attorney-client privileged information between Plaintiffs and their corporate attorneys.

5        31.    These emails and documents could have been accessed *only* from Plaintiffs'
6    private email accounts.

7        32.    *Neither Ms. Harmon nor P&B ever disclosed this information to Defendant.*
8    Defendant could have obtained the emails and documents only by exploiting Ms. Harmon's
9    inadvertently saved credentials to access, without authorization, Plaintiffs' personal and
10   business email accounts.

11       33.    Upon information and belief, Defendant's sole motivation for his
12   unauthorized access to Plaintiffs' email accounts was to find and transfer to himself
13   privileged, sensitive personal and business information that he felt would bolster his
14   position in the Divorce Proceedings against Ms. Harmon's daughter.

15       34.    Defendant never disclosed to Ms. Harmon that he could access or view her
16   email accounts on the family computer at all, let alone that he intended to transfer Plaintiffs'
17   emails for his own disposal and use in the Divorce Proceedings.

18       35.    Defendant knew he was not authorized to access Ms. Harmon's personal or
19   business accounts.

20       36.    Prior to Defendant's joinder of Ms. Harmon in the Divorce Proceedings, Ms.
21   Harmon never had any reason to know Defendant had accessed her email accounts without
22   authorization.

23       37.    Upon discovering Defendant's ability to access Plaintiffs' emails, Ms.
24   Harmon worked with an IT professional to change her passwords to all personal and
25   business email and computer accounts, and to prevent any emails or other information from
26   being "forwarded" to the email accounts apparently linked to the family computer.

27       38.    Also since discovering Defendant's unauthorized access to Plaintiffs' email
28   accounts, Ms. Harmon has hired forensic IT consultants to analyze Plaintiffs' email

accounts and determine: how Defendant accessed Plaintiffs' emails; the extent of the data breach, what files Defendant accessed, what files he copied, and what files he may have altered or deleted. As a result, Plaintiffs have suffered losses aggregating at least $5,000 in value.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

39. Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40. Defendant knowingly and intentionally accessed Plaintiffs' email accounts and protected business information without Plaintiffs' knowledge, let alone their authorization.

41. Defendant knew that he lacked authority to access these email accounts, as evidenced by his failure to disclose to Plaintiffs that he could access the accounts.

42. Plaintiffs' email accounts are protected because they are accessed through computers connected to the Internet.

43. Without permission, Defendant reviewed, copied, deleted, reorganized, renamed, and transferred information from Plaintiffs' protected accounts to his personal computer.

44. Through Defendant's unauthorized access of Plaintiffs' computer system, Defendant obtained valuable, protected, and privileged information from Plaintiffs' email accounts and databases.

45. Plaintiffs suffered loss within a one-year period aggregating at least $5,000 in value because Plaintiffs have incurred, or will incur, expenses over $5,000 in responding to Defendant's actions, including conducting a damage assessment, hiring a forensic IT analyst, and restoring any data or information to its condition prior to Defendant's unauthorized access and activities.

## COUNT II
## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

**AND STORED COMMUNICATIONS ACT,**
**18 U.S.C. § 2520, 2707**

46. Paragraphs 1 through 45 are incorporated by reference as if fully set forth herein.

47. The Electronic Communications Privacy Act and Stored Communications Act are the primary laws protecting the security and privacy of business and personal communications in the United States. These are "wiretap" statutes, and Defendant used the "Mail" application as a "wiretap" to secretly "eavesdrop" on Plaintiffs' emails. Through his unauthorized access, Defendant monitored and intercepted emails the moment they were delivered to Plaintiffs' account as if it were his own.

48. Defendant intentionally used the Mail application as a device to access Plaintiffs' email accounts without Plaintiffs' knowledge for the sole purpose of intercepting, monitoring, and saving Plaintiffs' protected personal and business email communications.

49. Through the "Mail" application, Defendant was able to instantaneously access Plaintiffs' emails the moment they were sent to Plaintiffs' accounts.

50. Through the "Mail" application, Defendant also was able to access, search, review, and copy the contents of Plaintiffs' previously received and stored emails and data, and thereby obtained the contents of the emails while they were in electronic storage.

51. In sum, using the "Mail" application, Defendant was able to receive, view, copy, and store the entire content of emails and attachments sent to Plaintiffs' email accounts as if they were his own, without ever tipping off Plaintiffs that he could view the accounts.

52. Defendant further intentionally disclosed the contents of Plaintiffs' emails, for instance, by designating them as exhibits to the Divorce Proceedings, while knowing that they were illegally obtained.

53. Defendant was not a party of any of the emails at issue in Plaintiffs' accounts.

54. Plaintiffs were not aware that Defendant had access to their email accounts through the "Mail" application; had Plaintiffs known, they would have never consented to Defendant's monitoring of the accounts. In fact, as soon as Plaintiffs discovered Defendant's ability to illegally view their emails, they took steps to thwart Defendant's access, including changing all passwords and forwarding settings.

55. Defendant's conduct violated 18 U.S.C. § 2511 and therefore gives rise to a claim under 18 U.S.C. § 2520.

56. Defendant's conduct further violated 18 U.S.C. § 2701 and therefore gives rise to a claim under 18 U.S.C. § 2707.

57. Defendant's unauthorized interception, disclosure, and use of Plaintiffs' email communications were a cause of Plaintiffs' injuries and damages, the nature, magnitude, and extent of which will be adduced in discovery and at trial, including statutory damages.

58. Plaintiffs are further entitled to equitable and injunctive relief, including an order enjoining Defendant from the continued electronic monitoring, surveillance, or following of Plaintiffs' electronic communications including, but not limited to, through the "Mail" application; and an order requiring Defendant to disclose to this Court all information he has viewed, obtained, copied, forwarded, or otherwise had access to in Plaintiffs' email accounts.

59. In addition, Plaintiffs are entitled to recover attorneys' fees and costs incurred in prosecuting these claims against Defendant.

## COUNT III
## INTRUSION UPON SECLUSION

60. Paragraphs 1 through 59 are incorporated by reference as if fully set forth herein.

61. Plaintiffs at all relevant times had an objectively reasonable expectation of privacy with respect to their personal and business-related emails.

62. Defendant intentionally interfered with or invaded Plaintiffs' privacy by inspecting Plaintiffs' private emails, including attorney-client privileged communications and sensitive, proprietary business information, without Plaintiffs' knowledge or permission.

63. Defendant's interference or invasion would be highly offensive to a reasonable person. Ms. Harmon felt seriously embarrassed and upset by Defendant's invasion and interference, because Defendant not only accessed and reviewed Plaintiffs' private emails without authorization but also intended to gather those files for use against Ms. Harmon's daughter in the Divorce Proceedings.

64. Defendant's interference or invasion was a cause of Plaintiffs' injuries and damages, the nature, magnitude, and extent of which will be adduced in discovery and at trial.

65. Defendant acted, at all relevant times, with an evil hand guided by an evil mind, such that an award of punitive damages is appropriate in an amount to be determined by the trier of fact.

# COUNT IV
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

66. Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67. Defendant gave publicity to matters concerning private information about Plaintiffs, including attorney-client privileged communications and sensitive, proprietary business information, when he identified such information as exhibits to the Divorce Proceedings, which are a matter of public record.

68. More specifically, Defendant accessed and publicly disclosed Plaintiffs' private emails without authorization, and he filed them as exhibits to Divorce Proceedings against Ms. Harmon's daughter without any notice that Defendant had access to or intended to use the private emails, at all. These actions reveal Defendant's primary purpose in accessing and disclosing the private emails was to embarrass and surprise Ms. Harmon.

69. Defendant's public disclosure of Plaintiffs' private information would be highly offensive to a reasonable person.

70. The matters Defendant publicized without Plaintiffs' permission is of a kind that is not of legitimate concern to the public.

71. At the time of the disclosure, Defendant knew or should have known that the information was private and that he obtained it without permission from Plaintiffs.

72. Defendant's disclosure of sensitive attorney-client privileged communications and proprietary business information has jeopardized Plaintiffs' business and franchise operations.

73. The disclosure of Plaintiffs' private information was a cause of Plaintiffs' injuries and damages, the nature, magnitude, and extent of which will be adduced in discovery and at trial.

74. Defendant acted, at all relevant times, with an evil hand guided by an evil mind, such that an award of punitive damages is appropriate in an amount to be determined by the trier of fact.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs P&B Franchise, LLC and Melodi Harmon respectfully request the Court:

1) Enter a judgment in favor of Plaintiffs against Defendant Andrew R. Dawson;

2) Declare that Defendant's conduct and actions have been willful and unauthorized and that Defendant acted with fraud, malice, and oppression;

3) Enter judgment awarding Plaintiffs actual damages from Defendant adequate to compensate Plaintiffs for damages caused by Defendant's unlawful activities, including, but not limited to, interest and costs in an amount to be proven at trial;

4) Enter judgment for injunctive relief as pleaded or as the Court may deem proper;

5) Enter judgment against Defendant awarding Plaintiffs enhanced, exemplary, punitive, and special damages, as permitted by law, in an amount to be awarded at trial as a result of his unlawful and unauthorized access of Plaintiffs' computer systems;

6) Enter judgment awarding Plaintiffs their attorneys' fees and costs incurred in pursuing a recovery arising from Defendant's violation of the Electronic Communications Privacy Act and Stored Communications Act; and

7) Grant Plaintiffs such other and further relief the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a jury trial on all claims so triable.

RESPECTFULLY SUBMITTED/DATED this 5th day of May, 2023.

        QUARLES & BRADY LLP
        Renaissance One
        Two North Central Avenue
        Phoenix, AZ  85004-2391

        By */s/ Jeffrey H. Wolf*

        *Attorneys for Plaintiffs*