Quarles & Brady LLP
Renaissance One
Suite 400
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

Jeffrey H. Wolf (AZ #011361)
jeffrey.wolf@quarles.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| P&B Franchise, LLC, an Arizona limited liability company; and Melodi Lee Harmon, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>Andrew R. Dawson, an individual,<br><br>        Defendant. | NO. 2:23-cv-00784-MTM<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER DIRECTING DEFENDANT TO PRESERVE AND MAKE COMPUTER DEVICES AND SYSTEMS AVAILABLE FOR FORENSIC IMAGING AND ANALYSIS** |

      Plaintiffs, P&B Franchise, LLC ("P&B") and Melodi Lee Harmon ("Ms. Harmon") (collectively, "Plaintiffs"), submit this Reply Memorandum in Support of Plaintiffs' Motion for Order to Preserve and Make Computer Devices and Systems Available for Forensic Imaging and Analysis.

**A.  Plaintiffs are not Attempting to Re-Litigate any Issues Raised in the Family Court Case, a Proceeding to Which Ms. Harmon was not a Party Until March 2023.**

      Defendant's response erroneously, and misleadingly, suggests that Plaintiffs are re-litigating the same issues that Ms. Harmon raised in the pending divorce proceeding, or that the denial of Ms. Harmon's motion in limine somehow blesses Defendant's unlawful access of emails, as is alleged in this case. Undersigned counsel was present at the divorce trial on June 6, 2023 when Judge Ronda Fisk announced her ruling on the motion in limine. Judge

Fisk denied the motion for strictly procedural reasons, specific to that case's pretrial scheduling order, and she stated in open court that she "is not getting involved in the federal lawsuit" and was not ruling on the admissibility of any particular email, making it abundantly clear her ruling was not intended to have any bearing on the issues to be decided in this case. Although it is understandable that Defendant's counsel – in this case – may not be fully aware of Judge Fisk's ruling, because they were not present and there is no written ruling, they obviously have a duty to make reasonable inquiry as to what they represent to this Court.

Rather, this case's sole connection to the divorce proceeding is that the superior court is the forum in which Defendant published the emails and documents he – admittedly – obtained and downloaded without Plaintiffs' authorization. Setting aside the limited relevance of the divorce proceeding's procedural history, even if Defendant were concerned that his soon-to-be ex-wife failed to produce relevant materials in that case, the applicable state court rules afforded him a procedure to *lawfully* compel the production of such documents. Defendant's remedy was not to *illegally* access and download emails from *Plaintiffs' email accounts without Plaintiffs' notice or permission*.[1] This Court should not condone such blatantly improper conduct.

Furthermore, the emails Defendant disclosed in the divorce case plainly refute his representation to this Court that he accessed only one of Plaintiffs' accounts only one time. Defendant claims that he downloaded all the emails from Plaintiffs' "Barbara Finch" account in January 2021, then deleted the account from his Mail application. Yet, metadata for emails Defendant submitted in the divorce proceedings reveals he downloaded emails

---

[1] In fact, Ms. Harmon was not even party to the divorce proceeding at the time Defendant accessed Plaintiffs' accounts. Ms. Harmon was joined to the divorce proceeding in March 2023. Only then did she obtain and review nearly forty Rule 26.1 disclosure statements served by Defendant in that case. And, only then did she discover that the voluminous disclosure statements included dozens of Plaintiffs' unlawfully obtained personal and business emails, which Defendant was attempting to use to advance his position in the divorce litigation.

from the "Mail" application as recently as May 15, 2023. Ex. A, Disclosure Metadata. Defendant further claims that he accessed and downloaded emails *only* from the "Barbara Finch" account. This also is plainly untrue. Defendant also unlawfully accessed – and disclosed in the family court case – numerous emails to and from Plaintiffs' personal *and* business email accounts—none of which included "Barbara Finch" as a sender or recipient. Ex. B, Sample Emails Filed as Disclosures. The account icons for the emails disclosed by Defendant further indicate that they were pulled from more than one account. *See id.* Specifically, the account icons in the upper-right-hand corner are distinct, and both clearly belong to Ms. Harmon's accounts: an email from Ms. Harmon's yahoo.com account showing the initials, "MH," and an email from Ms. Harmon's primpandblow.com account showing a photo of Ms. Harmon. *Id.* If these emails were, in fact, pulled from the same account, one would expect they would have the same icon. Furthermore, if they were pulled from a "Barbara Finch" account, one would expect the icon would reflect the initials "BF." Simply put, Defendant has already shown that he is not trustworthy, and Plaintiffs are entitled to determine the full scope of Defendant's access to their accounts through a forensic examination of his computer devices.

In sum, Defendant admits that he accessed and downloaded emails from at least one email account he knew did not belong to him. He further admits that he downloaded the entire contents of that account without Plaintiffs' knowledge, let alone their permission. But Defendant's own filings in the divorce proceedings reveal access far beyond what he has admitted to in his pleadings filed in this Court. And, his attempts to justify his wrongful access fall far short. Plaintiffs should be permitted to conduct a forensic examination of the hard drive of Defendant's computer devices in order to determine the method and full extent of his unlawful access, irrespective of anything related to the family court case.

**B.      The Special Discovery Master's Order did not Authorize Defendant to Illegally Access and Download Plaintiffs' Email Communications.**

Defendant attempts to justify his wrongful access of Plaintiffs' accounts by representing to this Court it was sanctioned by a Special Discovery Master's Order in the divorce proceedings. *See* Def.'s Resp. to Mot., Ex. E (ECF 19-1). Not so.

Contrary to Defendant's mischaracterization of the Order, it clearly did not grant him *carte blanche* to access Plaintiffs' email accounts without their permission; and it certainly did not authorize him to violate federal computer abuse and wiretap laws.[2] The issue before the Special Discovery Master's Order was limited to whether the evidence found on the computer was "protected from disclosure to Petitioner by any rules of procedure, law or ethics." *Id.* And, the Order authorized Defendant only to "access" the iMac computer. *Id.* Significantly, the Special Master expressly stated in the Order that she was "not . . . ruling that any particular piece of evidence is not subject to protection by any rule of procedure, law or rule of ethics." *Id.*

Furthermore, the Special Discovery Master's Order was based on the incorrect and unsubstantiated premise, asserted by Defendant, that Plaintiffs' private emails with their own counsel were not subject to attorney-client privilege because Plaintiffs were not a party to the divorce proceedings. *Id.*, Ex. D ("The correspondence found is not protected under attorney-client privilege as the account belonged to Melodi Harmon, who is not a party to this action nor is she a client of the Respondent's counsel."); *but see United States v. Richey*, 632 F.3d 559 (9th Cir. 2011) ("The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."); *see also Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("[W]hether or not a given communication is 'confidential' within the meaning of the privilege is determined from the perspective of the client."). The Order was further based on the

---

[2] Notably, Ms. Harmon was not a party to the divorce proceedings in January 2021 when Defendant filed his Request for Direction from Judicial Officer. She did not become a party until over two years later. Accordingly, she never had the opportunity to object to the Request, or statements therein, or otherwise take action to protect her privacy interests.

incorrect assumption that Plaintiffs had no privacy interest in the accounts because they had been logged into the iMac. *See* Def.'s Resp. to Mot., Ex. D (ECF 19-1) ("[T]he Respondent and Melodi Harmon could not possess an expectation of privacy by utilizing Mr. Dawson's work computer[3] and subsequently saving accounts and their corresponding passwords to those accounts."); *but see West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 744 n.4 (C.D. Cal. 2020) (finding plaintiff sufficiently alleged violations of the Computer Fraud and Abuse Act and expressly rejecting defendant's arguments that "if one has the password or if there is no password to access certain information, that person necessarily has 'authorization' to access it."). The Special Discovery Master's Order makes the express caveat that it was issued "without having an opportunity to review and [*sic*] evidence found on the computer, [and] based only on these representations," which were patently wrong. Def.'s Resp. to Mot., Ex. E (ECF 19-1).

Thus, Defendant's reliance on the Special Discovery Master's Order is entirely misplaced and does not justify his unauthorized access of Plaintiffs' accounts for purposes of this action.

## C. The Inspection and Examination Plaintiffs Seek is not Extraordinary, Particularly Given the Claims at Issue.

Federal Rule of Civil Procedure 34 expressly permits the inspection, copying, and testing of electronically stored information. Fed. R. Civ. Pro. 34(a)(1)(A). "To be sure, forensic imaging is not uncommon in the course of civil discovery." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (citing *Balboa Threadworks, Inc. v. Stucky,* No. 05–1157–JTM–DWB, 2006 WL 763668, at *3 (D. Kan. March 24, 2006)). District courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers. *See, e.g., Ameriwood Indus., Inc. v. Liberman,* No. 4:06CV524–DJS, 2006 WL

---

[3] Plaintiffs dispute that the iMac on which Defendant admittedly accessed their accounts is his "work computer." The iMac is a family computer purchased for and primarily used by Ms. Harmon's grandchildren before it ended up with Defendant after he left the residence he shared with his soon-to-be-ex-wife and Ms. Harmon. Defendant's continued use of the computer since leaving the residence is just another fact that can only be settled by an examination of it.

3825291, at *3–*6 (E.D. Mo. Dec.27, 2006), *amended by* 2007 WL 685623 (E.D. Mo. Feb.23, 2007); *Cenveo Corp. v. Slater,* No. 06–CV–2632, 2007 WL 442387, at *1–*3 (E.D. Pa. Jan. 31, 2007); *Frees, Inc. v. McMillian,* No. 05–1979, 2007 WL 184889, at *2 (W.D. La. Jan.22, 2007). And, courts in this circuit have acknowledged that independent experts should be authorized to obtain and search a "mirror image" of a party's computer equipment in situations where computers have "a special connection to the lawsuit." *See Memry Corp. v. Kentucky Oil Technology*, N.V., 2007 WL 832937, at *3 (N.D. Cal. 2007).

Districts courts frequently authorize forensic inspections where the use of the devices themselves led to the injury complained of in the lawsuit. For instance, in *Ameriwood Industries, Inc. v. Liberman,* No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec.27, 2006), the court allowed a forensic search where the main allegation of the complaint was that defendants improperly used their employer's computers to sabotage the plaintiff's business. In *Physicians Interactive v. Lathian Sys. Inc.,* No. CA 03-1193-A, 2003 WL 23018270 (E.D. Va. Dec.5, 2003), the court granted expedited discovery of the mirror image of defendants' hard drives where the plaintiff alleged that the defendants had launched attacks on plaintiff's file servers, and electronic data related to those attacks was on the computers. And, in *Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 651-52 (D. Minn. 2002), the court granted a motion for issuance of an order for preservation of records and allowed expedited hard drive mirroring where the defendants' continuous use of computers was making it likely that relevant electronic data would be overwritten before it could be accessed in the normal course of discovery.

The same is true here. Plaintiffs bring claims for violations of the Computer Fraud and Abuse Act, Electronic Communications Privacy Act, and Stored Communications Act (the "Acts"). *See* Compl. ¶¶ 39-59. Plaintiffs further bring claims for intrusion upon seclusion and invasion of privacy based on Defendant's publication of the same emails and documents he obtained by violating the Acts. *See* Compl. ¶¶ 60-74. Plaintiffs seek only to review the very computer devices that Defendant used to illegally access their accounts and commit the alleged violations. Thus, Plaintiffs' request is distinguishable from cases cited

by Defendant, in which the parties merely alleged inadequate productions. *E.g., Juul Labs, Inc. v. Chou*, 2022 WL 2161062 (C.D. Cal. 2022). Rather, Plaintiffs seek to inspect the same devices that Defendant used to cause the injuries alleged in the complaint.

Defendant's own admissions in this case further confirm that an expedited forensic examination is necessary. Specifically, Plaintiffs seek to recover electronic evidence that may be altered, deleted, or overwritten before Plaintiffs will have the opportunity to access it in the normal course of discovery. *Antioch Co.,* 210 F.R.D. at 652-53. Defendant represents to this Court that the iMac he used to access Plaintiffs' accounts is his "work computer." Answer ¶ 20. Defendant has also admitted to this Court that he has already "permanently deleted" accounts and emails from that iMac. Def.'s Resp. at p. 5, n.2. Relatedly, Plaintiffs' investigation will necessarily involve investigations of IP address logs and other historical data that may be subject to automatic deletion before the July 24, 2023 scheduling conference in this case. Given Defendant's use of the iMac and other computer systems in his ongoing work activities, Plaintiffs should be given an expedited opportunity to review relevant evidence before it is altered or deleted.

Defendant's misaligned representations to this court and disclosures in the divorce proceeding further justify Plaintiffs' expedited request to determine the full scope of his access to their accounts. *See Moser v. Health Ins. Innovations, Inc.*, 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018) ("Forensic examination is generally regarded as a drastic step ... [but] could be appropriate if there is a factual finding by the Court of improper conduct on the part of the responding party or intentional destruction of relevant electronic evidence."). Simply put, Defendant's narrative before this Court – that he accessed only one email account, only one time, from only one device, to secretly download emails he knew belonged to Plaintiffs – is flouted by the evidence he submitted in the divorce proceedings.

First, Defendant claims that he accessed only Barbara Finch's account. But, in the divorce proceedings, Defendant disclosed and submitted as trial exhibits numerous emails to *and* from Plaintiffs' personal and business email accounts; "Barbara Finch" was not

named as a sender or recipient on *any* of those emails. Ex. B. And, the distinct account icons for the emails disclosed by Defendant further indicate that they were pulled from more than one account. *See id.* Second, Defendant claims that he did not access any emails after January 2021. However, metadata for Defendant's divorce proceeding disclosures shows he downloaded emails *from the "Mail" application* as recently as *May 15, 2023*. Ex. A. Moreover, Arizona Rule of Family Law Procedure 49(b)(2) requires disclosure of evidence within 30 days of its discovery. Yet, Defendant disclosed emails from Plaintiffs' accounts, dated from 2018 and likely were in Defendant's possession since around 2021, as recently as May 18, 2023. Plaintiffs – and more importantly this Court – cannot simply take Defendant's word that he only improperly accessed one of Plaintiffs' accounts, only one time, using only one device. Plaintiffs are entitled to discover the full extent of Defendant's access to their email accounts. Plaintiffs cannot accomplish this without a forensic examination of his computer devices.[4]

This is not a case where Plaintiffs have stated a "mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason." *Cf. McCurdy Group LLC v. American Biomedical Group, Inc.,* 9 Fed. Appx. 822, 831 (10th Cir. 2001). Because of the nature of Plaintiffs' claims, and Defendant's actions with respect to Plaintiffs' electronic information to-date, Plaintiffs' requests are most certainly proportional to the needs of this case. The motion should be granted.

**D.    Plaintiffs Are Willing to Enter into a Confidentiality Order Prior to Conducting Any Forensic Exam of Defendant's Computer Systems.**

While Defendant took no issue with accessing, downloading, and disclosing Plaintiffs' proprietary business emails and attorney-client privileged communications to his advantage in the state court proceedings, he ironically represents to this Court that he should not be subject to a forensic examination because his computers contain confidential

---

[4] Even if Defendant actually accessed only one account, one time, and deleted all login information from his computer to all accounts, there is no way to confirm Defendant's narrative without a review of the computer by a forensic expert.

proprietary files. *See* Def.'s Resp. at p. 8. Plaintiffs acknowledge the importance of a "protocol" to protect against any invasion of privacy during a forensic examination. *Cf. Alexis v. Rogers*, 2017 WL 1073404, at *4 (S.D. Cal. Mar. 21, 2017). To that end, Plaintiffs are willing to enter an agreed confidentiality protective order prior to conducting any forensic examination of Defendant's computer devices. *See Austin v. Foodliner, Inc.*, No. 16-cv-07185-HSG (DMR), 2018 WL 1168694 (N.D. Cal. Mar. 6, 2018) (finding a protective order adequately addressed privacy and confidentiality interests).

**E.     Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request this Court GRANT their Motion for Order Directing Defendant to Preserve and Make Computer Devices and Systems Available for Forensic Imaging and Analysis.


RESPECTFULLY SUBMITTED/DATED this 15th day of June, 2023.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391


By */s/ Jeffrey H. Wolf*_____

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 15, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Randy Papetti
Jennifer Lee-Cota
Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85252
rpapetti@pswmlaw.com
jleecota@pswmlaw.com
*Counsel for Defendant Andrew R. Dawson*

/s/ *Jeffrey H. Wolf*
*Attorney for Plaintiffs*